UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| Paul Toomey, as representative of a class of similarly situated persons, and on behalf of the DeMoulas (Restated) Profit Sharing Plan and Trust, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil No. 19-11633-LTS |
| DeMoulas Super Markets, Inc., Arthur T. Demoulas, William F. Marsden, and William J. Shea, | ) ) ) ) | |
| Defendants. | ) ) | |

ORDER ON DEFENDANTS' MOTION TO DISMISS (DOC. NO. 32)

SOROKIN, J.

Plaintiff Paul Toomey worked for DeMoulas Super Markets, Inc. (DeMoulas) and was a participant in the DeMoulas (Restated) Profit Sharing Plan and Trust (the Plan) from the start of the class period until 2015, when he left the Company and his account was distributed. Doc. No. 1 (Complaint) ¶ 12.[1] Plaintiff brings two claims against DeMoulas and three individual trustees of the Plan to whom DeMoulas delegated some fiduciary responsibilities—Arthur T. Demoulas, William F. Marsden, and William J. Shea. Id. ¶ 21. Count I alleges that Defendants breached their duty of prudence under ERISA and Count II alleges that Defendant DeMoulas breached its

---

[1] Citations to "Doc. No. __" reference documents appearing on the court's electronic docketing system; pincites are to the page numbers in the ECF header.

The factual allegations that follow are drawn from the Complaint. Doc. No. 1. The Court accepts all non-conclusory facts alleged in the Complaint as true, Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011), and draws all reasonable inferences in favor of the plaintiffs, Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009).

1

obligation to monitor the individual defendants—the fiduciaries DeMoulas had entrusted to administer the Plan. Id. ¶¶ 63-77. Plaintiff brings these claims on his own behalf and on behalf of a putative class of participants and beneficiaries. Id. ¶ 55.

Defendants move to dismiss the Complaint in its entirety. Doc. No. 32. The motion is fully briefed, and the Court heard argument on April 8, 2020. For the reasons that follow, the Motion is DENIED.

I.  BACKGROUND

The Plan is an "employee pension benefit plan" within the meaning of ERISA 29 U.S.C. § 1002(2)(A) and a "defined contribution plan" within the meaning of 29 U.S.C. § 1002(34). Doc. No. 1 ¶ 14. DeMoulas, a Plan employer, is the Plan Sponsor within the meaning of 29 U.S.C. § 1002(16)(B) and a "named fiduciary" pursuant to 29 U.S.C. § 1102(a) with respect to the Plan. Id. ¶ 19. The participants in the Plan are current and former employees of DeMoulas. Id. ¶ 15.

Participants' accounts are funded solely by employer contributions, which are subject to a six-year vesting schedule—vesting at 20% after two years of employment and increasing 20% each year thereafter until reaching 100%. Id. ¶ 17. Employees are not permitted to contribute their own money to the Plan. Id.

Between 2013 and 2017, the Plan had approximately 11,000 to 13,000 participants with a wide range of retirement needs and objectives. Id. ¶¶ 16, 34. During that time, the Plan had between $580 million and $756 million in assets. Id. ¶ 16. The Plan contains one overarching investment into which participants are automatically enrolled. Id. ¶ 18. Participants have no choice over how their money is invested. Id. The Plan's Investment Policy Statement (IPS) called for 70% of the Plan's assets to be allocated into domestic fixed income options, and 30% into equities. Id. ¶ 33.

The issues in the case and the motion to dismiss arise from Plaintiff's allegations regarding the nature and management of the Plan.[2] Plaintiff's principal allegations fall into three broad categories. The first is that the Plan's one-size-fits-all target allocations (70% to fixed income options and 30% to equities) are inappropriate even for participants nearing retirement, but are especially inappropriate for participants in their twenties, thirties, and forties, who are decades away from retiring. ¶ 35 ("Many experts, including one of the managers of the Plan's underlying accounts (Morgan Stanley), recommend that participants have well over 30% of their retirement portfolio allocated towards equities at the time they actually retire, given that retirees generally need their savings to last two to three decades, while recommending that participants further from retirement allocate as much as 96% of their portfolio to equities. Yet, Defendants inexplicably reserved only 30% of the Plan's assets for equities.").

In the second category are Plaintiff's allegations that even taking the investment strategy chosen by the Plan as the benchmark, it was imprudently executed in several ways. For example, Plaintiff alleges that Defendants often failed to meet their own equity allocation targets, in some years devoting as much as 86% to fixed income options, with the remainder (14%) to equities. Id. ¶ 36. Plaintiff further alleges that even among fixed income investments, the defendants failed to undertake appropriate efforts to generate meaningful returns. In 2013, for example, Defendants invested 58% of the Plan's total assets—$336 million—in cash and money market accounts earning .01% interest or less. In 2014, Defendants increased the Plan's investment in cash (or cash equivalents) to over $400 million, or 66% of the Plan's assets, in accounts earning .05% interest

---

[2] The parties agree that Plaintiff's second cause of action—failure to monitor the fiduciaries—is derivative of Plaintiff's claim that Defendants breached their duty of prudence in managing the Plan assets, and that, as such, the two causes of action stand or fall together. The Court's discussion therefore focuses on Plaintiff's breach of duty claim.

3

or less. Id. ¶ 39. Defendants also left millions of dollars—$27 million in 2016—in bank accounts that returned 0% interest. Id. ¶ 40. Plaintiff also alleges that to the extent Defendants invested in bond funds, they failed to procure the lowest-cost share class of those funds even though, as a large institutional investor, they had the leverage to do so. Id. ¶ 45.

In the third category are allegations that Defendants failed to monitor the performance of their chosen investments or to choose better performing options to achieve the Plan's conservative investment goals, which options would have been revealed by a reasonable investigation. See, e.g., id. ¶ 65.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Courts must "take all factual allegations [in the Complaint] as true and . . . draw all reasonable inferences in favor of the plaintiff." Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007). The complaint must also "set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

## III. DISCUSSION

"The Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U.S.C. §1001 et seq., requires the fiduciary of a pension plan to act prudently in managing the plan's assets." Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 411-412 (2014) (citing 29 U.S.C. §1104(a)(1)(B)). Section 404(a)(1) of ERISA provides that "a fiduciary shall

discharge his duties with respect to a plan <u>solely in the interest of the participants and beneficiaries</u> and (A) for the <u>exclusive purpose</u> of: (i) <u>providing benefits to participants and their beneficiaries</u>; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A) (emphasis added).

Section 404(a)(1) further imposes a duty on plan fiduciaries to manage the plan "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).  This duty of prudence includes "a continuing duty to monitor [plan] investments and remove imprudent ones . . . separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset."  <u>Tibble v. Edison Int'l</u>, 135 S. Ct. 1823, 1828 (2015).  Section 404(a)(1) also provides that a fiduciary must discharge his duties with respect to a plan "in accordance with the documents and instruments governing the plan <u>insofar as such documents and instruments are consistent with the provisions of this title</u> . . ." 29 U.S.C. § 1104(a)(1)(D) (emphasis added).

The Supreme Court has explained that "[t]aken in context, §1104(a)(1)(B)'s reference to 'an enterprise of a like character and with like aims' means an enterprise with what the immediately preceding provision calls the 'exclusive purpose' to be pursued by all ERISA fiduciaries: 'providing benefits to participants and their beneficiaries' while 'defraying reasonable expenses of administering the plan.'" <u>Dudenhoeffer</u>, 573 U.S. at 420 (quoting 29 U.S.C. §§1104(a)(1)(A)(i), (ii)).  And it has explained that "the statute's requirement that fiduciaries act 'in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter' . . . makes clear that the duty of prudence trumps the instructions of a plan document . . ." <u>Id.</u> at 421 (quoting 29 U.S.C. §1104(a)(1)(D)).

In light of this guidance, the Court concludes that Plaintiff has alleged sufficient facts from which it is reasonable to infer a plausible claim of violation of the duty of prudence.  In so concluding, the Court is not determining that any single allegation or category of allegations suffices to allege imprudence or that, taken together, they establish imprudence, but only that Plaintiff has plausibly alleged the claim in light of the totality of the allegations.

A few further points bear mention.  Defendants contend that the Complaint here "is on all fours" with the complaint dismissed in the First Circuit's recent opinion in <u>Barchock v. CVS Health Corp.</u> 886 F.3d 43 (1st Cir. 2018), and should likewise be dismissed for failing to state a claim.  <u>Doc. No. 33 at 18-19</u>.  Defendants' contention is based principally on the <u>Barchock</u> court's observation that "conservativism in the management of a stable value fund—when consistent with the fund's objectives disclosed to the plan participants—is no vice," and the court's rejection of the allegation that "imprudence could be inferred from the fact that the fund's cash allocation 'was a severe outlier when compared to allocation averages for the stable value industry.'" <u>id.</u> at 19 (quoting <u>Barchock</u>, 886 F.3d at 46, 50) (internal quotation marks omitted).

Contrary to the Defendants' contention, especially at this stage of the proceedings, <u>Barchock</u>'s application to this case is premature because it addressed a seemingly different context.  In <u>Barchock,</u> the court was asked to determine whether the administrators of an employee pension plan that gave its participants a menu of options from which to choose had breached their duty of prudence by managing one of those options—a stable value fund whose stated objective was "to preserve capital"—too conservatively.  886 F.3d at 45-48.  As the First Circuit observed:

6

> The defendants point out that the complaint itself alleges that CVS [the Plan Sponsor] <u>offered the stable value fund as part of its more conservative retirement plan options</u> . . .  And, the defendants contend, it is clear from the face of the complaint that Galliard [the fund's manager] then fulfilled that conservative investment objective that had been disclosed to the plan participants. . . .  The plaintiffs do not dispute the defendants' characterization of what their complaint does and does not allege.  Thus, they do not dispute that Gaillard [the fund's manager] met the CVS stable value fund's stated objective of preserving capital while outperforming money market funds . . .  In addition, the plaintiffs clarified at oral argument that they are not arguing that <u>offering money market funds as a retirement plan</u> would in and of itself be a breach of the duty of prudence under ERISA.

<u>Id.</u> at 49 (emphasis added).  The Court then repeated the observation it had made in <u>Ellis v. Fidelity Mgmt Tr. Co.</u>, 883 F.3d 1, 9 (1st Cir. 2018), that "[u]nless we are to say that ERISA plans may not offer very conservative investment options (such as money market funds or treasury bond funds), then we cannot say that plans may not offer different types of stable value funds, including those that are intentionally and openly designed to be conservative." <u>Id.</u>  As it had explained in <u>Ellis</u>, "[i]f informed plans or their participants do not want such funds, they will not select them over the innumerable options available." 883 F.3d at 9.

The factual allegations here are markedly different.  Plaintiff alleges a series of facts occurring over time regarding both the allocation structure of the investment Plan vis-à-vis the interests of the beneficiaries and the implementation of the Plan that, <u>taken together</u>, <u>plausibly</u> allege a claim of imprudence.  Plaintiff does not allege that one of the investment options Plan participants were permitted to choose was managed too conservatively.  Rather, he alleges that fiduciaries of the Plan were imprudent in their consideration of  (or their failure to consider) the participants' varying interests and needs in the Plan's allocation structure and investment choices, and that these failures were compounded by a failure to review and revise those choices over time.  The Court's denial of the motion is not a ruling that an ERISA plan must follow any specific path.

Defendants also contend that to the extent Plaintiff's breach of fiduciary duty claim is based on an allegation that Defendants failed to provide him with a menu of investment options, the claim is barred by ERISA's three-year statute of limitations because Plaintiff had actual knowledge of that allegation no later than 2015 when he left the company and his account was distributed. Doc. No. 33 at 14 (citing Doc. No. 1 ¶ 12). The Court does not read Plaintiff's breach of fiduciary claim so narrowly. As the Court understands it, Plaintiff is not alleging that Defendants breached their duty of prudence by failing to provide Plan participants with a menu of investment options, though that might be a relevant factor in analyzing the prudence of Defendants' decisions when they were made

Moreover, given that Plaintiff alleges he did not have actual knowledge of all the material facts underlying his complaint until shortly before he filed suit, Doc. No. 1 ¶ 53, the statute of limitations is not an appropriate grounds of dismissal. See Intel Corp. Inv. Policy Comm. v. Sulyma, 140 S. Ct. 768 (2020) (holding that the three-year statute of limitations for breaches of fiduciary duty under ERISA applies only where the plaintiff had "actual knowledge" of the breach—and not where he only had reason to know of it or a means of acquiring that knowledge).

IV.   CONCLUSION

For the reasons stated, the Court DENIES Defendants' motion to dismiss Count I of the complaint. Because Count II is, for purposes of the motion to dismiss, derivative of Count I, the motion is also DENIED as to Count II. The Clerk shall schedule a Rule 16 conference.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge