**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Paul Toomey, Nanette Langone, and Randall May on behalf of the Estate of Martin May, individually and as representatives of a class of similarly situated persons, and on behalf of the Demoulas (Restated) Profit Sharing Plan and Trust,<br><br>　　　　　　　Plaintiffs,<br>v.<br><br>Demoulas Super Markets, Inc., Arthur T. Demoulas, William F. Marsden, and William J. Shea,<br><br>　　　　　　　Defendants. | Case No. 1:19-cv-11633-LTS<br><br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

BACKGROUND ...........................................................................................................................2

I. PROCEDURAL HISTORY ...........................................................................................................2

    A. Pleadings and Motion Practice.........................................................................................2

    B. Discovery and Mediation .................................................................................................3

II. OVERVIEW OF SETTLEMENT TERMS .......................................................................................3

    A. The Class........................................................................................................................3

    B. Monetary Relief .............................................................................................................4

    C. Prospective Relief ..........................................................................................................4

    D. Release of Claims ..........................................................................................................5

    E. Independent Fiduciary Review ........................................................................................5

    F. Class Notices and Settlement Administration...................................................................6

    G. Attorneys' Fees and Administrative Expenses ................................................................6

ARGUMENT ...............................................................................................................................6

I. STANDARD OF REVIEW ...........................................................................................................6

II. THE SETTLEMENT SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL ............................8

    A. The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel and a Well-Respected Mediator After Sufficient Discovery and Adequate Class Representation ......................................................................................................9

    B. The Settlement Provides Significant Relief to the Class and Does So Through an Effective Distribution Method that Treats Class Members Equitably........................10

    C. Plaintiffs Would Have Faced Potential Litigation Risks and Substantial Delay in the Absence of the Settlement .........................................................................................13

III. THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED ...................................15

IV. THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ...........................16

i

A.  The Requirements of Rule 23(a) are Satisfied ..............................................................16

    1.  Numerosity ............................................................................................................16

    2.  Commonality ..........................................................................................................16

    3.  Typicality ..............................................................................................................17

    4.  Adequacy ..............................................................................................................17

B.  The Requirements of Rule 23(b)(1) Are Satisfied ......................................................18

    1.  Rule 23(b)(1)(A) ..................................................................................................18

    2.  Rule 23(b)(1)(B) ..................................................................................................18

CONCLUSION ..................................................................................................................19

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Lockheed Martin Corp.*,
2015 WL 4398475 (S.D. Ill. July 17, 2015) ...............................................................15

*Amchem Products, Inc., V. Windsor*,
117 S. Ct. 2231 (1997)................................................................................................16

*Baptista v. Mut. of Omaha Ins. Co.*,
859 F. Supp. 2d 236 (D.R.I. 2012)...............................................................................9

*Beach v. JPMorgan Chase Bank, Nat'l Ass'n*,
2019 WL 2428631 (S.D.N.Y. June 11, 2019) ...........................................................19

*Bezdek v. Vibram USA Inc.*,
79 F. Supp. 3d 324 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015) ................9, 12

*Brotherston v. Putnam Invs., LLC*,
No. 1:15-cv-13825, ECF No. 220 (Apr. 29, 2020) ....................................................11

*Brotherston v. Putnam Investments, LLC*,
2017 WL 2634361 (D. Mass. June 19, 2017), *aff'd in part, vacated in part, remanded*,
907 F.3d 17 (1st Cir. 2018), *cert denied*, 140 S. Ct. 911 (Jan. 13, 2020) ....................13

*Cassell v. Vanderbilt Univ.*,
2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018) .........................................................19

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
100 F.3d 1041 (1st Cir. 1996).......................................................................................9

*Clark v. Duke Univ.*,
2018 WL 1801946 (M.D.N.C. Apr. 13, 2018) ...........................................................19

*Del Sesto v. Prospect Chartercare, LLC*,
2019 WL 2162083 (D.R.I. May 17, 2019) ...................................................................8

*Garcia-Rubiera v. Calderon*,
570 F.3d 443 (1st Cir. 2009)...................................................................................16, 17

*Gen. Tel. Co. of the S.W. v. Falcon*,
457 U.S. 147 (1982).....................................................................................................17

*Gordan v. Mass. Mutual Life Ins. Co.*,
No. 3:13-cv-30184, ECF No. 144 (D. Mass. Nov. 3, 2016)........................................13

*Greenspun v. Bogan*,
492 F.2d 375 (1st Cir.1974) ...........................................................................................16

*Henderson v. Emory Univ.*,
2018 WL 6332343 (N.D. Ga. Sept. 13, 2018) ...............................................................19

*Hill v. State Street Corp.*,
2015 WL 127728 (D. Mass. Jan. 8, 2015) ...............................................10, 13, 14, 16

*Hochstadt v. Boston Scientific Corp.*,
708 F. Supp. 2d 95 (D. Mass. 2010) ................................................7, 9, 17, 18, 19

*In re Asacol Antitrust Litig.*,
2017 WL 4118967 (D. Mass. Sept. 14, 2017) ................................................................7

*In re Evergreen Ultra Short Opportunities Fund Secs. Litig.*,
275 F.R.D. 382 (D. Mass. 2011) ...............................................................................16, 17

*In re Lupron Mktg. & Sales Practices Litig.*,
228 F.R.D. 75 (D. Mass. 2005) ...................................................................................7, 13

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*,
270 F.R.D. 45 (D. Mass. 2010) .......................................................................................7

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) .......................................................................................8

*In re Puerto Rican Cabotage Antitrust Litig.*,
269 F.R.D. 125 (D.P.R. 2010) .......................................................................................10

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005) ...............................................................................13, 14

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001) ......................................................................11, 12

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) ...........................................................................................18

*Johnson v. Fujitsu Tech. & Business of America, Inc.*,
2018 WL 2183253 (N.D. Cal. May 11, 2018) ...............................................................11

*Karg v. Transamerica Corp.*,
2020 WL 3400199 (N.D. Iowa March 25, 2020) ...........................................................19

*Kemp-DeLisser v. Saint Francis Hospital and Medical Center*,
2016 WL 6542707 (D. Conn. Nov. 3, 2016) ...............................................14

*Krueger v. Ameriprise Fin., Inc.*,
2015 WL 4246879 (D. Minn. July 13, 2015) ...............................................13

*Krueger v. Ameriprise*,
304 F.R.D. 559, 577 (D. Minn. 2014) ...........................................................19

*Kruger v. Novant Health, Inc.*,
2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) .......................................13, 15

*Marcoux v. Szwed*,
2017 WL 679150 (D. Me. Feb. 21, 2017) ....................................................12

*Medoff v. CVS Caremark Corp.*,
2016 WL 632238 (D.R.I. Feb. 17, 2016) .....................................................11

*Moreno v. Deutsche Bank Americas Holding Corp.*,
2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017)...........................................10, 19

*Nilsen v. York Cty.*,
400 F. Supp. 2d 266 (D. Me. 2005) .............................................................12

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999) ....................................................................................18

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ....................................................................................15

*Price v. Eaton Vance Corp.*,
No. 18-12098, ECF No. 45 (D. Mass. May 22, 2019)...............................11, 16

*Price v. Eaton Vance Corp.*,
No. 18-12098, ECF No. 62 (D. Mass. Nov 22, 2019) ..................................13

*Price v. Eaton Vance Corp.*,
No. 18-12098, ECF No. 43 (D. Mass. Nov. 25, 2019) .................................13

*Puerto Rico Dairy Farmers Ass'n v. Pagan*,
748 F.3d 13 (1st Cir. 2014)...........................................................................7

*Rapuano v. Trustees of Dartmouth College*,
334 F.R.D. 637 (D.R.I. 2020) ........................................................................8

*Sacerdote v. New York Univ.*,
328 F. Supp. 3d 273 (S.D.N.Y. 2018) ........................................................14

*Sacerdote v. New York Univ.*,
2018 WL 840364 (S.D.N.Y. Feb. 13, 2018) ..............................................19

*Shanechian v. Macy's,*
2011 WL 883659 (S.D. Ohio March 10, 2011) ..........................................17

*Short v. Brown Univ.*,
320 F. Supp. 3d 363 (D.R.I. 2018) ............................................................19

*Shirk v. Fifth Third Bancorp*,
2008 WL 4425535 (S.D. Ohio Sept. 20, 2008) ..........................................17

*Simerlein v. Toyota Motor Corp.*,
2019 WL 1435055 (D. Conn. Jan. 14, 2019) ................................................8

*Sims v. BB&T Corp.*,
2019 WL 1995314 (M.D.N.C. May 6, 2019) ..............................................11

*Sims v. BB&T Corp.*,
No. 1:15-cv-732, ECF No. 437 (M.D.N.C. Nov. 30, 2018) ........................12

*Swinton v. SquareTrade, Inc.*,
2019 WL 617791 (S.D. Iowa Feb. 14, 2019) ................................................8

*Tibble v. Edison Int'l*,
2017 WL 3523737 (C.D. Cal. Aug. 16, 2017) ............................................15

*Tigges v. AM Pizza, Inc.*,
2016 WL 4076829 (D. Mass. July 29, 2016) ..............................................17

*Tracey v. MIT*,
2018 WL 5114167 (D. Mass. Oct. 19, 2018) ........................................17, 19

*Tussey v. ABB Inc.,*
2017 WL 6343803 (W.D. Mo. Dec. 12, 2017) ............................................15

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
2017 WL 2655678 (C.D. Cal. June 15, 2017) ............................................19

*Velazquez v. Mass. Fin. Services Co.*,
No. 17-cv-11249, ECF No. 108 (D. Mass. Dec. 5, 2019) ............................11

*Velazquez v. Mass. Fin. Services Co.*,
No. 17-cv-11249, ECF No. 91-1 (D. Mass. June 14, 2019) ......................................................12

*Velazquez v. Mass. Fin. Services Co.*,
No. 17-cv-11249, ECF No. 96 (D. Mass. June 25, 2019)...........................................................16

*Vellali v. Yale Univ.*,
2019 WL 5204456 (D. Conn. Sept. 24, 2019) ..............................................................................19

*Wildman v. Am. Century Servs., LLC*,
2017 WL 6045487 (W.D. Mo. Dec. 6, 2017) ..............................................................................19

*Wildman v. Am. Century Servs., LLC*,
362 F. Supp. 3d 685 (W.D. Mo. 2019) ........................................................................................14

## Rules, Regulations and Statutes

29 U.S.C. § 1104(a) ......................................................................................................................18

Fed. R. Civ. P. 23, Advisory Committee Note (1966).................................................................19

Fed. R. Civ. P. 23(a)(1)................................................................................................................16

Fed. R. Civ. P. 23(a)(4)................................................................................................................17

Fed. R. Civ. P. 23(b)(1)................................................................................................................18

Fed. R. Civ. P. 23(c)(2)(B) ..........................................................................................................15

Fed. R. Civ. P. 23(e) advisory committee note (2018) .............................................................7, 8

Fed. R. Civ. P. 23(e)(1).................................................................................................................15

Fed. R. Civ. P. 23(e)(1)(B) ............................................................................................................8

Fed. R. Civ. P. 23(e)(2).................................................................................................................8

## Other Authorities

MANUAL FOR COMPLEX LITIGATION (Fourth) § 13.14 (2004) ........................................................7

Prohibited Transaction Exemption 2003-39,
68 Fed. Reg. 75632, *as amended*, 75 Fed. Reg. 33830 ("PTE 2003-39")......................................5

Restatement (Third) of Trusts, § 100 cmt. b(1) (2012).................................................................14

# INTRODUCTION

Plaintiffs Paul Toomey, Nanette Langone, and Randall May ("Plaintiffs") submit this Memorandum in support of their Motion for Preliminary Approval of Class Action Settlement. A copy of the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") is attached as **Exhibit A** to the accompanying Declaration of Kai Richter ("*Richter Decl.*").[1] This Settlement resolves Plaintiffs' class action claims against Defendants Demoulas Super Markets Inc. ("DSM"), and Plan Trustees Arthur T. Demoulas, William F. Marsden, and William J. Shea (collectively "Defendants") concerning Defendants' administration and management of the Demoulas (Restated) Profit Sharing Plan and Trust ("Plan").

Under the terms of the proposed Settlement, DSM and its insurers will pay a gross settlement amount of $17,500,000 into a common fund for the benefit of the Class. This is a significant monetary recovery for the Class that compares favorably to court-approved settlements in similar ERISA cases. Moreover, the Settlement also provides for prospective relief. Specifically, the Plan's fiduciaries will (1) limit the amount of Plan assets held in cash or cash equivalent accounts to 10% or less; and (2) modify the Plan's Investment Policy Statement ("IPS") to increase the annual return target by 100 basis points. *Id. ¶ 8.* These changes address Plaintiffs' allegation that the Plan's investment portfolio allowed "little opportunity for growth." *ECF No. 67 ¶ 37.*

For the reasons set forth below, the Settlement is fair, reasonable, and adequate, and merits preliminary approval so that the proposed Notices can be sent to the Class. Among other things supporting preliminary approval:

- The Settlement was negotiated at arm's length by experienced and capable counsel with the assistance of a well-respected mediator;

---

[1] Capitalized terms have the meaning assigned to them in Article 2 of the Settlement Agreement, unless otherwise specified herein.

- The Class for purposes of settlement meets the requirements of Rule 23;

- The Settlement provides for significant monetary relief that compares favorably with settlements in other cases, and is reasonably allocated among Class Members;

- The prospective relief ensures that participants will have more opportunity for growth;

- The Released Claims are tailored to the claims that were asserted or could have been asserted based on the same factual predicate;

- The proposed Notices provide fulsome information to Class Members about the Settlement, and will be distributed via first-class mail; and

- The Settlement Agreement provides Class Members the opportunity to raise any objections they may have to the Settlement.

Accordingly, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement; (2) certifying the proposed class for settlement purposes; (3) approving the proposed Notices and authorizing distribution of the Notices; (4) scheduling a final approval hearing; and (5) granting such other relief as set forth in the proposed Preliminary Approval Order submitted herewith. This motion is not opposed by Defendants as parties to the Settlement Agreement.

## BACKGROUND

### I. PROCEDURAL HISTORY

#### A. Pleadings and Motion Practice

Plaintiff Paul Toomey filed his Class Action Complaint on July 30, 2019, alleging that Defendants breached their fiduciary duty of prudence under ERISA with respect to the Plan's investment offering for Plan Members. *See ECF No. 1*.[2] On September 27, 2019, Defendants filed a motion to dismiss. *ECF No. 32*. After careful consideration, the Court denied the motion to dismiss on April 16, 2020. *See ECF No. 42*. Plaintiffs later filed an Amended Complaint on September 24, 2020, adding Plaintiffs Langone and May to the case. *See ECF No. 67*.

---

[2] Plaintiffs also asserted a claim against DSM for allegedly failing to monitor Plan fiduciaries.

### B. Discovery and Mediation

After serving written discovery, Plaintiff filed a motion to compel production of documents and disclosure of ESI search terms and custodians. *See ECF No. 53*. After briefing had closed, Plaintiff agreed to withdraw his motion to compel in exchange for Defendants' prompt production of a complete set of Trustee meeting minutes and materials. *Richter Decl. ¶ 12.* To date, Defendants have produced over 35,000 pages of documents, including Trustee meeting minutes and materials detailing Defendants' process for managing the Plan, class member data, and information regarding the Plan's investment performance and investment managers. *Id.*

On September 30, 2020, the Parties engaged in a full-day mediation before Hunter Hughes. *Id. ¶ 14.* Mr. Hughes is an experienced and well-respected mediator who has successfully resolved numerous high-stakes ERISA class actions such as this one. *Id. & Richter Decl. Ex. B.* While the parties did not reach an agreement at the mediation, they continued negotiations through the mediator over the next two weeks and eventually agreed to a mediator's proposal. *Id. ¶ 15.*

## II. OVERVIEW OF SETTLEMENT TERMS

The terms of the Settlement are memorialized in the Settlement Agreement that is the subject of this motion.

### A. The Class

The Settlement Agreement applies to the following Class, which tracks the class definition outlined in the Amended Complaint while adding an end date (*ECF No. 67*):

> All participants and beneficiaries of the Demoulas (Restated) Profit Sharing Plan and Trust at any time from July 30, 2013 through November 20, 2020, excluding Defendants, the Plan's Trustees, any other employees with responsibility for the Plan's investment or administrative functions, and current and former members of Defendants' Board of Directors.

*Settlement Agreement ¶ 2.43.* Based on information provided by DSM's counsel, there are approximately 18,600 Class Members. *Richter Decl. ¶ 3.*

### B. Monetary Relief

Under the Settlement, DSM and its insurers will contribute a Gross Settlement Amount of $17.5 million to a common settlement fund (the "Settlement Fund"). *Settlement Agreement ¶ 2.37.* After accounting for any Attorneys' Fees and Costs, Administrative Expenses, and Class Representative Service Awards approved by the Court, the Net Settlement Amount will then be distributed to eligible Class Members. *Id. ¶¶ 2.33, 5.9.*

The Net Settlement Amount will be allocated among eligible Class Members in proportion to their average annual account balances in the Plan. *Id. ¶ 6.4.* The Plan accounts of Participant Class Members who are currently enrolled in the Plan will be automatically credited with their share of the Net Settlement Amount. *Id. ¶ 6.5.* Former Participant Class Members who no longer have a Plan account may elect to have their share of the Net Settlement Amount rolled over into an individual retirement account or other eligible employer plan by submitting a Former Participant Rollover Form. *Id. ¶¶ 2.28, 6.6.* Any Former Participants who do not submit a Former Participant Rollover Form will receive their share via check (subject to a $10 *de minimus* threshold to minimize distribution costs). *Id ¶¶ 6.4.2, 6.6.* Under no circumstances will any monies revert to DSM. Any checks that are uncashed after 120 days will revert to the Qualified Settlement Fund and will be used to defray administrative costs of the Plan. *Id. ¶¶ 6.11, 6.12.*

### C. Prospective Relief

The Settlement also provides that the following procedures shall apply to the management of the Plan on a prospective basis after the Settlement Effective Date:

(a)     The Plan's fiduciaries will invest no more than 10% of Plan assets in cash or cash equivalent accounts;[3] and

---

[3] This excludes the annual contribution to the Plan, which is added to the Plan's cash accounts typically in December of each year. Defendants will have 60 days from the date of such contribution to prudently invest the funds.

      (b)     The Plan's fiduciaries will modify the Plan's IPS to increase the Plan's annual return target by 100 basis points.

*Settlement Agreement ¶ 7.1.*

### D. Release of Claims

In exchange for this relief, the Class will release Defendants and other Released Parties (as defined in ¶ 2.38 of Settlement) from all claims:

    **2.39.1**      That were asserted in the Action (including any assertion set forth in the Complaint or the Amended Complaint, or any other submission made by the Class Representatives, Class Members, or Class Counsel in connection with the Action) or that are based on the same factual predicate as the claims asserted in the Action;[4]

    **2.39.2**      that would be barred by res judicata based on the Court's entry of the Final Approval Order;

    **2.39.3**      that arise from the direction to calculate, the calculation of, and/or the method or manner of the allocation of the Net Settlement Fund pursuant to the Plan of Allocation; or

    **2.39.4**      that arise from the approval by the Independent Fiduciary of the Settlement Agreement.

*Id. ¶ 2.39.* The release carves out claims "to enforce the Settlement Agreement." *Id. ¶ 9.2.*

### E. Independent Fiduciary Review

As required under ERISA, DSM will retain an Independent Fiduciary to review the Settlement and authorize the release (if approved) on behalf of the Plan. *Id. ¶ 3.1; see also* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, *as amended*, 75 Fed. Reg. 33830 ("PTE 2003-39"). The Independent Fiduciary will issue its report prior to the final approval hearing, so the Court may consider it. *Id. ¶ 3.1.2.*

---

[4] The release language has been truncated due to space limitations. The full release language, incorporated by reference, is in the Settlement Agreement, ¶ 2.39.

**F.     Class Notices and Settlement Administration**

Class Members will be sent a direct notice of the settlement ("Notice") via U.S. Mail. *Id.* *¶¶ 2.45, 3.3 & Exs. 1 & 2.* The Notice sent to Former Participants will also include a Former Participant Rollover Form enabling them to make the election described above. *Id. ¶ 6.6 & Ex. 3.* These Notices provide information to the Class regarding, among other things: (1) the nature of the claims; (2) the scope of the Class; (3) the terms of the Settlement; (4) the process for submitting Former Participant Rollover Forms; (5) Class Members' right to object to the Settlement and the deadline for doing so; (6) the class release; (7) the identity of Class Counsel and the amount of Attorneys' Fees they will seek in connection with the Settlement; (8) the amount of any requested Class Representatives' Service Awards; (9) the date, time, and location of the final approval hearing; and (10) Class Members' right to appear at the hearing. *Id. ¶ 2.45 & Exs. 1 & 2.*

To the extent that Class Members would like more information about the Settlement, the Settlement Administrator will establish a Settlement Website on which it will post the Notices, Former Participant Rollover Form, and relevant case documents, including a copy of the Amended Complaint and all documents filed with the Court in connection with the Settlement. *Id. ¶ 12.1.* Further, the Settlement Website will also include a toll-free telephone number through which Class Members may contact the Settlement Administrator, and receive answers to questions. *Id. ¶ 12.2.*

**G.     Attorneys' Fees and Administrative Expenses**

The Settlement requires that Class Counsel file their Motion for Attorneys' Fees and Costs (including any Administrative Expenses) at least 30 days before the deadline for objections. *Id. ¶ 8.1.* Under the Settlement, these fees and costs must be reasonable (fees are capped at one-third of the Gross Settlement Amount) and are subject to Court approval. *Id.* The Settlement also provides for Service Awards up to $10,000 per Class Representative, subject to Court approval. *Id. ¶ 8.2.*

I.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement agreement that will bind absent class members. "Approval is to be given if a settlement is untainted by collusion and is fair, adequate, and reasonable." *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 93 (D. Mass. 2005). The First Circuit has expressed a "strong public policy in favor of settlements, particularly in very complex and technical regulatory contexts" such as this. *Puerto Rico Dairy Farmers Ass'n v. Pagan*, 748 F.3d 13, 20 (1st Cir. 2014).

Settlement approval involves two stages: "First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing." *Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95, 106-07 (D. Mass. 2010) (citing MANUAL FOR COMPLEX LITIGATION (Fourth) § 13.14 (2004)). At the preliminary approval stage, courts in this District "examine the proposed settlement for obvious deficiencies before determining whether it is in the range of fair, reasonable, and adequate." *In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 62 (D. Mass. 2010). A settlement is fair for the purposes of preliminary approval if: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."[5] *Hochstadt*, 708 F. Supp. 2d at 107.

In 2018, Rule 23(e) was amended to specify uniform standards for settlement approval. *See* Fed. R. Civ. P. 23(e) advisory committee note (2018). The amended rule states that, at the preliminary approval stage, the court must determine whether it "will likely be able to: (i) approve

---

[5] "The fourth factor is more often relevant for purposes of final approval." *In re Asacol Antitrust Litig.*, 2017 WL 4118967, at *3 (D. Mass. Sept. 14, 2017).

the proposal under Rule 23(e)(2); and (ii) [where a class has not already been certified] certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2), in turn, specifies the following factors the court must ultimately consider at the final approval stage in determining whether a settlement is "fair, reasonable, and adequate":

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[6] "The goal of this amendment is not to displace any [existing] factor, but rather to focus the court … on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) advisory committee note (2018).

## II.  THE SETTLEMENT SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL

As discussed below: (1) the settlement was negotiated at arm's length by experienced

---

[6] Courts considering motions for preliminary approval after 2018 have taken different views as to whether these amendments altered or merely codified existing case law. *Compare Swinton v. SquareTrade, Inc.*, 2019 WL 617791, at *4-5 & n.9 (S.D. Iowa Feb. 14, 2019) (concluding that the amendments "are mostly form over substance" and "largely codify existing case law") *with In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019) (stating that the "will likely be able to" standard "appears to be more exacting than the prior requirement"). Courts within the First Circuit have generally continued to apply the same "within the range of" standard to preliminary approval even after the 2018 amendments. *See Simerlein v. Toyota Motor Corp.*, 2019 WL 1435055, at *10 (D. Conn. Jan. 14, 2019); *Del Sesto v. Prospect Chartercare, LLC*, 2019 WL 2162083, at *1 (D.R.I. May 17, 2019); *Rapuano v. Trustees of Dartmouth College*, 334 F.R.D. 637, 654 (D.R.I. 2020).

counsel with the help of a well-respected mediator after sufficient discovery, (2) the Class was adequately represented by the Class Representatives and Class Counsel, and (3) the relief provided is adequate and equitable to all Class Members in light of the risks and costs of further litigation. Accordingly, this Court should grant preliminary approval of the Settlement.

### A. The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel and a Well-Respected Mediator After Sufficient Discovery and Adequate Class Representation

A proposed class action settlement enjoys a "presumption in favor of the settlement" if "sufficient discovery has been provided and the parties have bargained at arms-length." *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). In determining whether there has been sufficient discovery, the relevant question is whether the parties have enough information "'to make an intelligent judgment about settlement.'" *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 348 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015) (quoting *Hochstadt,* 708 F.Supp.2d at 107). That is precisely the situation presented here. Before filing this case, Class Counsel conducted a thorough investigation and prepared a detailed Complaint. *Richter Decl. ¶ 10*. In the 15 months since this action was filed, Class Counsel responded to a motion to dismiss; filed a motion to compel; obtained more than 35,000 pages of documents from Defendants and reviewed those documents; drafted a detailed mediation statement; and engaged in a full-day mediation with an experienced and well-regarded mediator. *Id. ¶¶ 11-15*. As a result, the parties have a strong understanding of the strengths and weaknesses of their case. *See Bezdek*, 79 F. Supp. 3d at 348 (finding "sufficient discovery" absent depositions where class counsel was well-informed and recognized the "significant hurdles in pursuing the litigation to trial"); *Baptista v. Mut. of Omaha Ins. Co.,* 859 F. Supp. 2d 236, 241 (D.R.I. 2012) (finding "minimal and primarily informal" discovery sufficient where parties had a strong understanding of the strength of their

respective cases); *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 141 (D.P.R. 2010) (the parties were "sufficiently informed" despite "limited discovery" to that point).

"When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight." *Hill v. State Street Corp.*, 2015 WL 127728 at *7 (D. Mass. Jan. 8, 2015). Here, both Class Counsel and Defendants' counsel are knowledgeable and experienced in complex class actions involving allegations of breaches of fiduciary duties under ERISA. *See, e.g., Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, at *11 (S.D.N.Y. Sept. 5, 2017) ("Plaintiffs' counsel [Nichols Kaster, PLLP] are experienced litigators who serve as class counsel in ERISA actions involving defined-contribution plans"); *Richter Decl. ¶¶ 18-20* (outlining qualifications and experience of class counsel). Indeed, Class Counsel have litigated three other ERISA class actions in this District, taking one of those cases through trial and successfully litigating an appeal to the First Circuit. *Id. ¶¶ 18-19.*

Finally, the Class Members have been adequately represented by the Class Representatives in this case. The Class Representatives have fulfilled their duties to the Class by (among other things) reviewing the complaints and assisting counsel in its investigation, communicating with Class Counsel to remain up to date on the case, and reviewing the proposed Settlement. *See Toomey Decl. ¶ 3*; *Langone Decl. ¶ 3; May Decl. ¶ 3.* There are no known conflicts between the Class Representatives and the Class. *See Toomey Decl. ¶ 8*; *Langone Decl. ¶ 8; May Decl. ¶ 8.*

## B. The Settlement Provides Significant Relief to the Class and Does So Through an Effective Distribution Method that Treats Class Members Equitably

The product of the parties' informed negotiations was a Settlement that provides significant relief to the Class. The $17,500,000 settlement amount is substantial in relation to other similar ERISA settlements. *See Richter Decl. ¶ 6.* By comparison, three recently-approved ERISA

settlements in this District, involving Putnam, Massachusetts Financial Services ("MFS"), and

Eaton Vance, were $12.5 million, $6.875 million and $3.45 million, respectively. *See Brotherston*

*v. Putnam Invs., LLC*, No. 1:15-cv-13825, ECF No. 220 (Apr. 29, 2020); *Velazquez v. Mass. Fin.*

*Services Co.*, No. 17-cv-11249, ECF No. 108 (D. Mass. Dec. 5, 2019); *Price v. Eaton Vance Corp.*,

No. 18-12098, ECF No. 45 (May 22, 2019).

This recovery is substantial not only in the aggregate, but as a percentage of Plan assets.

The $17.5 million settlement amount represents approximately 2.03% of Plan assets. *See Richter*

*Decl. ¶ 6.* By comparison, the recoveries in *Eaton Vance*, *MFS* and *Putnam* represented 0.52%,

0.64% of 1.62% of plan assets, respectively. *Id.* Moreover, the Settlement in this case also

compares favorably to the recent ERISA settlement involving the MIT Supplemental 401(k) Plan,

which provided for a similar aggregate recovery ($18.1 million), but a lower recovery as a

percentage of plan assets (approximately 0.33%). *Id.*

The recovery also represents a significant portion of the alleged damages. Specifically, the

$17.5 million settlement amount constitutes approximately 15%-20% of the alleged losses to the

Plan during the Class Period. *See Richter Decl. ¶ 7.* This is also on par with other settlements that

have been approved. *See Sims v. BB&T Corp.*, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019)

(approving $24 million ERISA 401(k) settlement that represented 19% of estimated damages);

*Johnson v. Fujitsu Tech. & Business of America, Inc.*, 2018 WL 2183253, at *6-7 (N.D. Cal. May

11, 2018) (approving $14 million ERISA 401(k) settlement that represented "just under 10% of

the Plaintiffs' most aggressive 'all in' measure of damages"); *Medoff v. CVS Caremark Corp.*,

2016 WL 632238, at *6 (D.R.I. Feb. 17, 2016) (settlement providing recovery of 5.33% of

maximum recoverable damages was well above the median percentage of settlement recoveries in

comparable securities class action cases); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d

706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses).

Moreover, in addition to the foregoing monetary compensation, the Settlement provides for meaningful prospective relief. *Richter Decl. ¶ 8.* Going forward, Defendants will not invest more than 10% of Plan assets in cash or cash equivalents. *Id.* Additionally, Defendants will modify the Plan's IPS to increase the Plan's annual return target by 100 basis points. *Id.* This prospective relief addresses two core issues raised in this lawsuit: Defendants' conservative management of the Plan and large investments in cash accounts. *See ECF No. 67 ¶¶ 6-7.* Such prospective relief further supports settlement approval. *See Bezdek*, 79 F. Supp. 3d at 346-47 (noting that prospective relief is "a valuable contribution" to a settlement agreement); *Nilsen v. York Cty.*, 400 F. Supp. 2d 266, 284 (D. Me. 2005) (prospective relief benefitting class members supports settlement); *Marcoux v. Szwed*, 2017 WL 679150, at *3 (D. Me. Feb. 21, 2017) (same).

The Settlement also treats Class Members equitably, and the proceeds will be delivered through an effective method of distribution. Pursuant to the Plan of Allocation, the Net Settlement Amount will be allocated among all eligible Class Members on a *pro rata* basis in proportion to their average annual account balances in the Plan during the Class Period. *Settlement Agreement ¶ 6.4.2.* Current participants in the Plan will have their accounts automatically credited with their share of the Settlement Fund. *Id. ¶ 6.5.* Former Participants are entitled to the same proportional share of the Settlement, and may receive their share via direct rollover to a qualified retirement account or by check. *Id. ¶ 6.6.* This method of distribution has been routinely approved in similar ERISA class action settlements. *See, e.g.*, *MFS*, No. 17-cv-11249, ECF No. 91-1 at ¶¶ 2.6, 6.1, 6.6; *Sims,* No. 1:15-cv-732, ECF No. 437 at 3-4 (M.D.N.C. Nov. 30, 2018).

Finally, any attorneys' fees that will be deducted from the Gross Settlement Amount are

subject to Court approval and must be reasonable. *Settlement Agreement ¶¶ 8.1-8.2.* The fees that Class Counsel intend to seek (no more than one-third of the Gross Settlement Amount) are consistent with applicable law,[7] and are fully disclosed in the Notices that will be sent to the Class. *See Settlement Agreement, Exs. 1 & 2 at p.7.* Moreover, Class Counsel will file their motion for an award of Attorney's Fees and Costs at least 30 days before the deadline for objections. *Settlement Agreement ¶ 8.1.*

### C. Plaintiffs Would Have Faced Potential Litigation Risks and Substantial Delay in the Absence of the Settlement

In the absence of a Settlement, Plaintiffs would have faced potential litigation risks. *See Hill*, 2015 WL 127728, at *10 (D. Mass. Jan. 8, 2015) (noting that the risk of continued litigation includes the risk that there could be no recovery at all); *In re Lupron*, 228 F.R.D. at 97 ("[A] significant element of risk adheres to any litigation taken to binary adjudication"). These risks are objectively illustrated by the judgment entered in favor of the defendants following seven days of trial in another ERISA case in this District. *See Brotherston v. Putnam Investments, LLC*, 2017 WL 2634361 (D. Mass. June 19, 2017), *aff'd in part, vacated in part, remanded,* 907 F.3d 17 (1st Cir. 2018), *cert denied*, 140 S. Ct. 911 (Jan. 13, 2020). Although the First Circuit partially vacated the defense judgment in *Putnam* and remanded the matter for further proceedings, *see* 907 F.3d at 23, the twists and turns of that case illustrate the risks and uncertainty of a case such as this. Moreover, in two other recent trials involving defined contribution plans, the defendants also were

---

[7] *See, e.g., See Eaton Vance*, No. 18-12098, ECF Nos. 62, 63 (approving one-third fee); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 85−89 (D. Mass. 2005) (same); *Gordan v. Mass. Mutual Life Ins. Co.*, No. 3:13-cv-30184, ECF No. 144 (D. Mass. Nov. 3, 2016) (same); *see also Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *2 (M.D.N.C. Sept. 29, 2016) ("[C]ourts have found that '[a] one-third fee is consistent with the market rate' in a complex ERISA 401(k) fee case such as this matter"); *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *2 (D. Minn. July 13, 2015) ("In such cases, courts have consistently awarded one-third contingent fees.").

the prevailing party. *See Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685, 711 (W.D. Mo. 2019); *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018).

Even if Plaintiffs established a fiduciary breach at trial (which Plaintiffs believed they could do), issues of loss would have remained. For example, in *Sacerdote v. New York Univ.*, the court found that "while there were deficiencies in the Committee's processes—including that several members displayed a concerning lack of knowledge relevant to the Committee's mandate—plaintiffs have not proven that … the Plans suffered losses as a result." 328 F. Supp. 3d 273, 280 (S.D.N.Y. 2018). The Court in *Wildman* also concluded that the plaintiffs failed to prove loss. *See Wildman*, 362 F. Supp. 3d at 710 (W.D. Mo. 2019). And in *Putnam*, the First Circuit held that "questions of fact" remained regarding whether plaintiffs' expert "picked suitable benchmarks, or calculated the returns correctly, or focused on the correct time period" for purposes of calculating investment losses to the Plan. *Brotherston*, 907 F.3d at 34. These decisions illustrate the significant risks that Plaintiffs faced on the issue of loss. *See* Restatement (Third) of Trusts, § 100 cmt. b(1) (2012) (noting that determination of losses attributable to the failure to monitor investments in breach of fiduciary duty cases is "difficult").[8] This further supports settlement approval. *See Hill*, 2015 WL 127728, at *9; *Kemp-DeLisser v. Saint Francis Hospital and Medical Center*, 2016 WL 6542707, at *9 (D. Conn. Nov. 3, 2016) (finding complex damages analysis weighed in favor of ERISA class settlement).

Aside from these risks, continuing the litigation would have resulted in complex and costly proceedings before this Court, which would have significantly delayed any relief to Class Members (at best), and might have resulted in no relief at all. It is well-recognized that ERISA

---

[8] *See also In re Relafen Antitrust Litigation*, 231 F.R.D. 52, 73 (D. Mass. 2005) ("A high degree of precision cannot be expected in valuing a litigation, especially regarding the estimation of the probability of particular outcomes.") (quotation omitted).

class actions "often lead[] to lengthy litigation." *See Ameriprise*, 2015 WL 4246879, at *1. In fact, it is not unusual for these cases to extend for a decade or longer before final resolution. *See Tussey v. ABB Inc.,* 2017 WL 6343803, at *3 (W.D. Mo. Dec. 12, 2017) (requesting proposed findings more than ten years after suit was filed on December 29, 2006); *Tibble v. Edison Int'l*, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed on August 16, 2007); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015) (noting that the case had originally been filed on September 11, 2006). Given the risks, cost, and delay of further litigation, it was reasonable and appropriate for Plaintiffs to reach a settlement on the terms that were negotiated. *See Kruger*, 2016 WL 6769066, at *5 ("settlement of a 401(k) excessive fee case benefits the employees and retirees in multiple ways").

## III.   THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED

In addition to reviewing the substance of the parties' Settlement Agreement, the Court must ensure that notice is sent in a reasonable manner to all class members who would be bound by the proposed settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice proposed here. The Settlement Administrator will provide direct notice of the Settlement to the Settlement Class via U.S. Mail. *Settlement Agreement ¶ 3.3.* This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985).

The content of the Settlement Notices is also reasonable. The Settlement Notices include, among other things: (1) a summary of the lawsuit; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) a disclosure of the release of claims; (5) instructions for submitting a Former Participant Rollover Form (where the Notice is sent to Former Participants); (6) instructions as to how to object to the Settlement and a date by which

Settlement Class members must object; (7) the date, time, and location of the final approval hearing; (8) contact information for the Settlement Administrator; and (9) information regarding Class Counsel and the amount that Class Counsel will seek in Attorneys' Fees (as well as the amount of the proposed service awards). *Settlement Agreement Exs. 1 & 2.* This Settlement Notice is reasonable, as it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them." *Hill*, 2015 WL 127728, at *15 (D. Mass. Jan. 8, 2015) (quoting *Greenspun v. Bogan*, 492 F.2d 375, 382 (1st Cir.1974)) (internal citations omitted); *See also MFS*, No. 17-cv-11249, ECF No. 96 ¶ 5 (approving similar notice); *Eaton Vance*, No. 18-12098, ECF No. 45 ¶ 8 (same). Moreover, the Notices will be supplemented through the Settlement Website and telephone support line. *See supra* at 6.

## IV. THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Finally, the Court should certify the Settlement Class for settlement purposes.

### A. The Requirements of Rule 23(a) are Satisfied

Rule 23(a) requires that a class demonstrate: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. *Amchem Products, Inc., V. Windsor*, 117 S. Ct. 2231, 2245 (1997). Each of the of requirements is met here.

#### 1. Numerosity

Numerosity requires that the proposed class is so numerous that joinder of all class members would be impracticable. Fed. R. Civ. P. 23(a)(1). This standard is clearly met for the Settlement Class, which includes approximately 18,600 persons *See Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009) (numerosity is met where class exceeds 40).

#### 2. Commonality

Commonality requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(1). Commonality is a "low hurdle." *In re Evergreen Ultra Short*

*Opportunities Fund Secs. Litig.*, 275 F.R.D. 382, 388 (D. Mass. 2011) (citation omitted). Here, the commonality requirement is satisfied because Plaintiffs bring "questions concerning Defendants' alleged breaches of fiduciary duties under ERISA." *Hochstadt*, 708 F. Supp. 2d at 103; *see also Shanechian v. Macy's,* 2011 WL 883659, at *3 (S.D. Ohio March 10, 2011) ("[T]he commonality requirement is typically easily satisfied in ERISA cases.").

### 3.     Typicality

The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). A class representative's claim is typical if it "'arise[s] from the same event or practice or course of conduct that gives rise to the claims of the other class members, and [is] based on the same legal theory.'" *Tigges v. AM Pizza, Inc.*, 2016 WL 4076829, at *9 (D. Mass. July 29, 2016) (quoting *Garcia-Ruberia*, 570 F.3d at 460). This requirement is satisfied in a breach of fiduciary duty case such as this, which is brought on behalf of the Plan.[9] *See Tracey v. MIT*, 2018 WL 5114167, at *4 (D. Mass. Oct. 19, 2018) (breach of prudence claim on behalf of a plan satisfies typicality); *see also Shirk v. Fifth Third Bancorp*, 2008 WL 4425535, at *3 (S.D. Ohio Sept. 20, 2008) (citations omitted) ("Generally, there is little doubt that a class representative's breach of fiduciary duty claim is in every respect typical of those of his fellow class members.").

### 4.     Adequacy

The fourth requirement under Rule 23(a) is that the Class Representatives and counsel "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4).  For the reasons discussed above, this requirement is satisfied. *See supra* at 9-10.

---

[9] Plaintiffs bring this action pursuant to 29 U.S.C. § 1132(a)(2) and (3), which provide that participants in an employee retirement plan may pursue a civil action on behalf of the plan to remedy breaches of fiduciary duties and other prohibited conduct.  *Am. Compl. ¶ 10.*

## B.	The Requirements of Rule 23(b)(1) Are Satisfied

The proposed class also satisfies Rule 23(b)(1). Under Rule 23(b)(1), a class may be certified if prosecution of separate actions by individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1). Cases such as this, which involve allegations of fiduciary breaches to a trust or plan, are precisely the type of cases that are encompassed by the rule. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (noting that a breach of trust action is a "classic example" of a Rule 23(b)(1) class).

### 1.	Rule 23(b)(1)(A)

Certification of the class under Rule 23(b)(1)(A) is proper because prosecution of individual actions would create incompatible standards of conduct for Defendants. The fiduciary duties imposed by ERISA are "duties with respect to a plan" that are intended to protect the "interest of the participants and beneficiaries" collectively. *See* 29 U.S.C. § 1104(a). Accordingly, "in light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held." *Hochstadt*, 708 F. Supp. 2d at 105 (emphasis added) (quoting *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585 at 604 (3d Cir. 2009)).

### 2.	Rule 23(b)(1)(B)

Likewise, class certification is appropriate under Rule 23(b)(l)(B). The Advisory Committee Notes to Rule 23 specify that class certification is appropriate under Rule 23(b)(1)(B)

in "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." Fed. R. Civ. P. 23, Advisory Committee Note (1966); *See also Hochstadt*, 708 F. Supp. 2d at 105-06 ("Given that the present case involves an ERISA § 502(a)(2) claim brought on behalf of the Plan and alleging breaches of fiduciary duty on the part of Defendants that will, if true, be the same with respect to every class member, I find that Rule 23(b)(1)(B) is clearly satisfied."). Courts routinely certify similar cases under Rule 23(b)(1)(B).[10]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) preliminarily approve the Settlement; (2) certify the proposed Settlement Class for settlement purposes; (3) approve the proposed Notices and authorize distribution of the Notices; (4) schedule a final approval hearing; and (5) enter the accompanying Preliminary Approval Order.

Respectfully Submitted,

Dated: November 20, 2020      **NICHOLS KASTER, PLLP**

s/Kai Richter
Paul J. Lukas (admitted *pro hac vice)*
Kai Richter (admitted *pro hac vice)*
Brock J. Specht (admitted *pro hac vice)*
Ben Bauer (admitted *pro hac vice)*
NICHOLS KASTER, PLLP
4700 IDS Center, 80 S. 8th Street

---

[10] *See, e.g., Karg v. Transamerica Corp.*, 2020 WL 3400199 (N.D. Iowa March 25, 2020); *Vellali v. Yale Univ.*, 2019 WL 5204456 (D. Conn. Sept. 24, 2019); *Beach v. JPMorgan Chase Bank, Nat'l Ass'n*, 2019 WL 2428631 (S.D.N.Y. June 11, 2019); *Cassell v. Vanderbilt Univ.*, 2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018); *Tracey*, 2018 WL 5114167; *Henderson v. Emory Univ.*, 2018 WL 6332343 (N.D. Ga. Sept. 13, 2018); *Short v. Brown Univ.*, 320 F. Supp. 3d 363 (D.R.I. 2018); *Clark v. Duke Univ.*, 2018 WL 1801946 (M.D.N.C. Apr. 13, 2018); *Sacerdote v. New York Univ.*, 2018 WL 840364 (S.D.N.Y. Feb. 13, 2018); *Wildman v. Am. Century Servs., LLC*, 2017 WL 6045487 (W.D. Mo. Dec. 6, 2017); *Moreno*, 2017 WL 3868803, at *8; *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2017 WL 2655678, at *8 (C.D. Cal. June 15, 2017); *Krueger v. Ameriprise,* 304 F.R.D. 559, 577 (D. Minn. 2014); *Shanehchian*, 2011 WL 883659, at *10.

Minneapolis, Minnesota 55402
lukas@nka.com
krichter@nka.com
bspecht@nka.com
bbauer@nka.com

Jason M. Leviton (BBO #678331)
Jacob A. Walker (BBO #688074)
BLOCK & LEVITON LLP
260 Franklin Street, Suite 1860
Boston, Massachusetts 02110
(617) 398-5600
jason@blockesq.com
jacob@blockesq.com

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2020 a true and correct copy of the foregoing was

served by CM/ECF to the parties registered to the Court's CM/ECF system.

Dated: November 20, 2020    <u>s/Kai Richter</u>
             Kai Richter